BETTY GILMAN, an Infant, by SAMUEL NOVIDOFF, Her Guardian ad Litem, Respondent, *v.* HYMAN KATZ, Appellant.

Third Department, November 13, 1924.

**Husband and wife — breach of promise of marriage — neither complaint nor evidence shows acceptance by plaintiff of offer of marriage — forcible sexual intercourse not consideration for promise of marriage — promise of marriage subsequent to time alleged in complaint cannot support verdict for plaintiff — sexual intercourse prior to promise of marriage cannot enhance damages.**

In an action to recover damages for the breach of promise of marriage the complaint does not contain any allegation that the plaintiff promised to marry the defendant or accepted his offer and likewise the evidence is devoid of proof that the plaintiff, upon any occasion, promised to marry the defendant or inferentially otherwise accepted his offer of marriage, but on the contrary the testimony of the plaintiff shows that when the defendant asked her to marry him she did not consent and was undecided because, as she stated, she had not known him long enough.

An act of sexual intercourse occurring shortly after the offer of marriage cannot be considered an acceptance of the offer, since the act was committed forcibly and against the will of the plaintiff, and furthermore an act of sexual intercourse by itself will not constitute a sufficient consideration to support a promise of marriage.

The verdict in favor of the plaintiff cannot be supported by a promise of marriage made after the time alleged in the complaint.

Since the act of sexual intercourse took place before a binding promise of marriage had been made it could not properly be used to enhance the damages resulting from a breach of the promise.

APPEAL by the defendant, Hyman Katz, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Sullivan on the 26th day of May, 1923, upon the verdict of a jury for $1,500, and also from an order entered in said clerk's office denying the defendant's motion for a new trial made upon the minutes.

*John D. Lyons* [*Isidor Enselman* and *Ralph F. Kane* of counsel], for the appellant.

*Meyer A. Novick,* for the respondent.

H. T. KELLOGG, J.:

The complaint alleges that the defendant made the acquaintance of the plaintiff in the month of June, 1922; that he ingratiated himself in her favor by diverse acts and artifices; that in the evening of the 4th day of June, 1922, about nine o'clock, the defendant invited the plaintiff to take a ride in an automobile; that while the

parties were sitting in the automobile in a secluded spot, the defendant ardently expressed his love to the plaintiff and promised to marry her at the first opportunity; that relying upon said protestations of love and the promise of marriage made, the plaintiff, at the special instance and request of the defendant, had intercourse with the defendant and yielded up her virtue; that the defendant thereafter failed to carry out his promise to marry the plaintiff; that as a result of the act of sexual intercourse the plaintiff suffered bodily pain and mental anguish. The plaintiff testified that while on the evening of the fourth of June the automobile was proceeding to the secluded spot described the following conversation occurred: " Q. What did he say? A. He said he would like to marry me. Q. And what did you say to him? A. Well, I didn't know what to say; I loved him; I was undecided, but I did not think I knew him long enough." Arrived at the secluded spot the following occurred: " He twisted my arms behind and he pulled me down and I lifted myself and I tried to throw myself out of the machine, and I could not, and he said ' Don't bother; you might as well come through with it.' He says ' I will marry you; I will do the right thing by you;' and that it did not make any difference. ' If you love me you will do it,' and I objected, and I objected, and I did not want to do it. Q. What did he do? A. He got a hold of my leg and he pulled me down on the seat and he got on top of me. Q. What else did he do? A. Well, you know what he did." It is highly probable that the witness meant that the parties indulged in sexual intercourse. It will be observed that the complaint is devoid of any allegation, and the record is devoid of proof that the plaintiff upon any occasion whatsoever promised to marry the defendant, or inferentially or otherwise accepted his offer of marriage. On the contrary, the proof shows that as the parties journeyed to the secluded spot the plaintiff, after the defendant's offer of marriage, was undecided about accepting it, since her acquaintance with the defendant did not justify her in the belief that she had known him long enough. Moreover, when the interesting event was about to occur, the plaintiff " objected," and " objected," and " did not want to do it." Thus it appears not only that there was no promise of marriage on the part of the plaintiff to support the offer of marriage made by the defendant, but also that the plaintiff gave to the defendant no *quid pro quo* whatsoever for his promise, since what he received was not voluntarily given, but was forcibly taken. Even had it been otherwise an act of sexual intercourse by itself would not constitute a sufficient consideration to support a promise of marriage. It is true that there is proof of a promise made

by the plaintiff after the fourth day of June. That proof, however, cannot save the verdict which the plaintiff has recovered. In the first place, the promise proven is not the promise set up in the complaint. In the second place, the act of sexual intercourse took place before a binding promise of marriage had been made. It could not properly be used, therefore, to enhance the damages resulting from a breach of the promise.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment and order reversed on the law and facts and new trial granted, with costs to the appellant to abide the event.